IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DANA UNDIES, INC.,<br>individually and on behalf of all others<br>similarly situated, | : <br> : <br> : | |
| | : | CIVIL ACTION NO. 07 CV 10340 |
| Plaintiff, | : <br> : | |
| | : | |
| v. | : | CLASS ACTION COMPLAINT |
| | : <br> : | |
| COATS PLC; COATS NORTH AMERICA<br>DE REPUBLICA DOMINICANA, INC.;<br>WILLIAM PRYM GMBH & CO., KG; PRYM<br>CONSUMER USA, INC.; PRYM FASHION,<br>INC.; SCOVILL FASTENERS, INC.;<br>YKK CORPORATION; YKK CORPORATION<br>OF AMERICA, INC.; YKK (U.S.A.) INC.; and<br>YKK SNAP FASTENERS AMERICA, INC., | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | JURY TRIAL DEMANDED |
| Defendants. | : | |

Dana Undies, Inc. ("Plaintiff"), on behalf of itself and all those similarly situated,

brings this action for damages under the antitrust laws of the United States against Defendants

Coats plc; Coats North America De Republica Dominicana, Inc.; William Prym GMBH & Co.,

KG; Prym Consumer USA, Inc.; Prym Fashion, Inc.; Scovill Fasteners, Inc.; YKK Corporation;

YKK Corporation of America, Inc.; YKK (U.S.A.) Inc.; and YKK Snap Fasteners America, Inc.,

demands a jury trial, and alleges as follows:

## NATURE OF THE CASE

1.      This case arises from a global conspiracy by Defendants to fix prices and

allocate customers and geographic territories for hard haberdashery fasteners, including zippers,

rivets, eyelets, snaps, hooks and eyes, and other fastening devices (hereinafter "fasteners") and

736819.5

fastener-attaching machines. Fasteners are primarily used in the apparel, textile, and footwear industries.

2.    Plaintiff brings this action on behalf of itself and other persons and entities in the United States who purchased fasteners and fastener-attaching machines directly from Defendants during the period from January 1, 1991 to December 31, 2003. Because of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and other Class Members paid artificially inflated prices for fasteners and fastener-attaching machines and as a result have suffered antitrust injury to their business or property. Plaintiff seeks treble damages and attorneys' fees and costs under the antitrust laws of the United States on behalf of itself and all others similarly situated who purchased fasteners and fastener-attaching machines from Defendants during the Class Period.

<b><u>JURISDICTION AND VENUE</u></b>

3.    Plaintiff brings this action pursuant to sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged in this Complaint.

4.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337 and sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

5.    Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15(a) and 22 and 28 U.S.C. § 1391(b), (c), and (d) because, during the Class Period, Defendants and/or their co-conspirators resided, transacted business, or were found in this District, or because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and a

736819.5

2

substantial portion of the affected interstate trade and commerce described below was carried out in this District.

6.       This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) had substantial contacts with the United States, including in this District; and/or (c) was engaged in an illegal antitrust conspiracy that was directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## PLAINTIFF

7.       Plaintiff Dana Undies, Inc. ("Dana") is a Florida corporation with its principal place of business in Blakely, Georgia. During the Class Period, Dana purchased fasteners directly from one or more of the Defendants and paid more for fasteners than it would have in the absence of the conspiracy.

## DEFENDANTS

8.       Defendant Coats plc ("Coats") is a corporation established under the laws of the United Kingdom with its principal place of business in Uxbridge, Middlesex, United Kingdom. Coats plc was known by several other names during the Class Period prior to 2001, including Coats Patons plc (1961 to 1986) and Coats Viyella plc (1986 to 2001), before being renamed Coats plc in 2001. Coats is the second largest manufacturer of zippers in the world. During the Class Period, Coats plc and its predecessor entities manufactured, sold and/or distributed fasteners to customers throughout the United States, either directly or through its affiliated companies.

9.      Defendant Coats North America de Republica Dominicana, Inc. ("Coats North America") is a North Carolina corporation with its principal place of business located in Charlotte, North Carolina. Coats North America is a wholly-owned and controlled subsidiary of defendant Coats plc. During the Class Period, Coats North America manufactured, sold and/or distributed fasteners to customers throughout the United States, either directly or through its affiliated companies. Coats and Coats North America are referred to collectively herein as "Coats."

10.      Defendant William Prym GmbH & Co., KG ("Prym") is a German company with its principal place of business in Stolberg, Germany. Prym refers to itself and its subsidiaries collectively as the Prym Group. Prym is comprised of three divisions, Prym Consumer, Prym Fashion, and Inovan. Prym Consumer supplies sewing products, needlework, fashion accessories, and fasteners such as snaps, buttons, eyelets, buckles, hooks, and snap attacher tools. Prym Fashion produces and sells fastening systems and accessories in the garment and textile industries. During the Class Period, Prym manufactured and sold, marketed, and distributed fasteners to customers in the United States.

11.      Defendant Prym Consumer USA, Inc. (previously known as Prym Dritz Corporation) ("Prym Consumer") is a South Carolina corporation with its principal place of business in Spartanburg, South Carolina. During the Class Period, Prym Consumer manufactured and sold fasteners to customers in the United States.

12.      Defendant Prym Fashion, Inc. ("Prym Fashion") is a Delaware corporation with its principal place of business in Spartanburg, South Carolina. During the Class Period, Prym Fashion sold fasteners to customers in the United States. Prym, Prym Consumer, and Prym Fashion are referred to collectively herein as "Prym."

736819.5                                        4

13.    Defendant Scovill Fasteners, Inc. ("Scovill") is a Delaware corporation with its principal place of business in Clarkesville, Georgia. During the Class Period, Scovill, directly or through its subsidiaries or affiliates, manufactured and sold fasteners to customers in the United States.

14.    Defendant YKK Corporation ("YKK") is a Japanese corporate entity and has its principal place of business in Tokyo, Japan. YKK refers to itself and its subsidiaries collectively as the YKK Group. YKK has the largest share, approximately 50%, of the worldwide fastener market. During the Class Period, the YKK Group manufactured, sold, marketed, and distributed fasteners to customers in the United States.

15.    Defendant YKK Corporation of America ("YKK America") is a New York corporation with its principal place of business in Marietta, Georgia. During the Class Period, YKK America, directly or through its subsidiaries or affiliates, manufactured and sold fasteners to customers in the United States.

16.    Defendant YKK Snap Fasteners America, Inc. ("YKK Snap Fasteners") is a Delaware corporation with its principal place of business in Lawrenceburg, Kentucky. During the Class Period YKK Snap Fasteners manufactured and sold fasteners to customers in the United States. YKK, YKK America, and YKK Snap Fasteners are referred to collectively herein as "YKK."

## AGENTS AND CO-CONSPIRATORS

17.    The acts alleged against the Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of defendants' businesses or affairs.

18.    Various persons and/or firms not named as defendants herein may have participated as co-conspirators in the violations alleged herein, and may have performed acts and made statements in furtherance thereof.

19.    Each Defendant acted as the principal, agent, or joint venturer of, or for, other defendants with respect to the acts, violations, and common course of conduct alleged by plaintiffs.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action against Defendants under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of itself and all members of the following Class:

> All persons and entities in the United States who purchased fasteners or fastener-attaching machines directly from Defendants during the period from January 1, 1991 to December 31, 2003. Excluded from the Class are Defendants, their co-conspirators and their respective parents, subsidiaries, and affiliates. Also excluded are all government entities, all judges and justices assigned to hear any aspect of this action, and all members of court staff and assigned judge's and justice's immediate families.

21.    Plaintiffs do not know the exact size of the Class because such information is in the exclusive control of the defendants. Due to the nature of the trade and commerce involved, however, plaintiffs believe that the Class members are numerous and geographically dispersed throughout the United States, rendering joinder of all Class members impracticable.

22.    The questions of law or fact common to the Class include but are not limited to:

a.    Whether Defendants and their co-conspirators engaged in a contract, combination and/or conspiracy to fix, raise, maintain, or stabilize prices or allocate customers for fasteners and fastener-attaching machines sold in the United States;

736819.5                                      6

      b.      The identity of participants in the conspiracy;

      c.      Whether the alleged conspiracy violated section 1 of the Sherman Act, 15 U.S.C. § 1;

      d.      The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

      e.      Whether Defendants' conduct caused the prices of fasteners and fastener-attaching machines sold in the United States to be at artificially high and non-competitive levels; and

      f.      Whether Plaintiff and the other members of the Class were injured by Defendants' conduct, and, if so, the appropriate class-wide measure of damages.

23.     These and other questions of law and fact are common to the Class, and predominate over any questions affecting only individual Class members.

24.     Plaintiff's claims are typical of the claims of the Class because Plaintiff directly purchased fasteners from one or more of the Defendants.

25.     Plaintiff will fairly and adequately represent the interest of the Class in that Plaintiff is a direct purchaser of fasteners and has no conflict with any other member of the Class.  Furthermore, Plaintiff has retained competent counsel experienced in antitrust, class action, and other complex litigation.

26.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution as a class action will eliminate the possibility of repetitive litigation.  There were will be no material difficulty in the management of this action as a class action.

27.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

## FACTS

28.     Hard haberdashery products include needles, knitting pins, crochet hooks, pins, zippers, rivets, snaps, hooks and eyes, eyelets, and other fastening products. Soft haberdashery products include thread and textile products for the leather and garment industry.

29.     The market for hard haberdashery fasteners is dominated by a small number of long-established manufacturers: Prym, founded in Germany in 1530; Coats, founded in Scotland in 1755; and YKK, founded in Japan in 1934. All three companies have a history of anti-competitive conduct. In 2004, the European Commission fined Prym and Coats € 30 million apiece for their participation in a market-sharing cartel from 1994 through 1999 involving needles and other hard haberdashery products. Commission Decision, Case F-1/38.338 – PO/Needles (Oct. 26, 2004). In 1993, YKK (U.S.A.), Inc. and the U.S. Federal Trade Commission entered into a consent agreement in a case involving YKK's (unaccepted) price-fixing and market allocation overtures to a competitor in the United States' zipper market. *YKK (USA) Inc.*, 116 F.T.C. 628 (1993). According to the European Commission, the three companies controlled the European fastener market for thirty years, through a combination of illegal, anti-competitive agreements to fix prices and allocate the market.

30.     On September 19, 2007, the European Commission announced it fined YKK, Prym, Coats, three other companies, and one trade association a total of € 328,644,000 for operating four cartels in Europe and worldwide in the markets for fasteners and fastener-attaching machines. The decision names five subsidiaries of YKK, PRYM, and Coats, together

736819.5                                        8

with Scovill, A. Raymond, Berning & Söhne GmbH & Co. KG, and the German trade association Fachverband Verbindungs- und Befestigungstechnik ("VBT"). The Commission found four separate cartels in which these companies agreed to coordinate price increases, fix minimum prices, allocate customers, and exchange other commercially important and confidential information. By cooperating with the European Commission, Prym received full immunity under the European Commission's leniency program from punishment for its role in one cartel. In addition, the fines imposed on Prym for its involvement in the other cartels were lowered as a result of the company's cooperation. Smaller reductions in fines were also granted to YKK and Coats as a result of their cooperation.

31. The European Commission began the investigation on its own initiative after certain information was brought to its attention. This led to unannounced inspections in November 2001 at the premises of several producers of hard and soft haberdashery. These inspections triggered applications from Prym, Coats, and YKK for immunity or reductions in fines.

32. The evidence uncovered in the inspections showed that the companies ran illegal cartels in the markets for zip fasteners, other fasteners (*e.g.,* snap buttons, rivets), and fastener-attaching machines. Numerous documents and statements provided by the leniency applicants confirmed this evidence.

33. The first cartel, involving Prym and Coats, was the longest conspiracy, lasting for more than 21 years, from 1977 until at least 1998. During this period, the two companies agreed to a global market allocation of the whole haberdashery market.

34. The second cartel, involving YKK, Prym, Scovill, A. Raymond, and Berning & Söhne, ran from 1991 until at least 2001. During this period the companies agreed on

coordinated price increases in annual "price rounds" with respect to fasteners and fastener-attaching machines, while participating in meetings organized by the trade association VBT.

35.     The third cartel, involving Prym and YKK, ran from 1999 until at least 2003. During this period, the two leading manufacturers of fastening products in Europe fixed prices on a product-by-product and country-by-country basis, and allocated customers globally with respect to fasteners and their attaching machines.

36.     The fourth cartel, involving YKK, Coats, and Prym, ran from April 1998 to at least November 1999.  During this period, the three leading manufacturers of zip fasteners met on a number of occasions to exchange price information and to discuss price increases. The three companies also agreed on a methodology to set minimum prices for zip fasteners.

37.     The European Commission stated that it has evidence that in all four cartels high-ranking management (such as managing directors, sales directors, and board members) participated in regular meetings and discussions. There is also evidence that the companies were aware that their behavior was illegal.

38.     In a press release issued on September 19, 2007, Prym admitted that individuals at the highest level of management were actively involved in the cartels: "The members of the board of management of the Prym Group in charge at the times of the cartels, who are no longer active in the Prym undertakings, have at all times admitted the participation and cooperated with the European Commission in its investigations."

39.    The European Commission imposed these fines for the four cartels:

| Name of company: | Fines (euros): |
|---|---|
| Prym | 40,538,000 |
| YKK | 150,250,000 |
| Coats | 122,405,000 |
| Scovill | 6,002,000 |
| A. Raymond S.A.R.L. | 8,325,000 |
| Berning & Söhne GmbH & Co. KG | 1,123,000 |
| Fachverband Verbindungs- und Befestigungstechnik (VBT) | 1,000 |
| TOTAL | 328,644,000 |

40.    According to the European Commission, Coats and Prym agreed to a market allocation plan for the entire fastener market from 1977 – 1998.  In 1991, a non-zipper fastener cartel was formed for the limited submarket of VBT-associated work.  In 1998 and 1999, the bilateral arrangement terminated, and two new cartels took its place.  A zipper cartel was formed between Coats, Prym, and YKK, and a non-zipper fastener cartel was formed between Prym and YKK.

41.    The cartels and their participants are summarized as follows:

| Years | Participants | Zippers | Non-Zipper Fasteners |
|---|---|---|---|
| 1977 – 1998 | Coats<br>Prym | ✓ | ✓ |
| 4/1998 - 11/1999 | Coats<br>Prym<br>YKK | ✓ | |
| 1999 – 2003 | Prym<br>YKK | | ✓ |
| 1991 – 2001 | YKK<br>Prym<br>Scovill<br>A. Raymond<br>Berning & Söhne | | ✓ |

42.    The European Commission stated that the evidence uncovered in the 2001 inspections revealed the existence of illegal cartels in the markets for zip fasteners, "other fasteners" (*e.g.*, snap buttons and rivets) and their attaching machines.  The existence of these cartels was confirmed by numerous documents and statements provided by Coats, Prym, and YKK.

43.    According to the European Commission, one of the cartels, involving Prym and YKK, ran from 1999 until at least 2003.

> During this period the two leading manufacturers of fastening products in Europe fixed prices on a product-by-product and country-by-country basis and allocated customers on a worldwide level with respect to "other fasteners" and their attaching machines. (Emphasis added).

This was the first time the European Commission revealed that YKK was a participant in any anticompetitive conduct, or that the scope of any of the cartels had extended beyond Europe.

## INTERSTATE TRADE AND COMMERCE

44.    During the Class Period, each Defendant, or one or more of its subsidiaries, sold fasteners and fastener-attaching machines in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

45.    During the Class Period, Defendants and co-conspirators collectively controlled a vast majority of the market for fasteners and fastener-attaching machines, both globally and in the United States.

46.    The business activities of the Defendants and co-conspirators substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

## CLAIM FOR RELIEF

## VIOLATIONS OF 15 U.S.C. § 1

## (Against All Defendants)

47.     Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

48.     Beginning at least as early as January 1, 1991, and continuing until at least December 31, 2003, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into and engaged in a contract, combination, or conspiracy to fix, raise, maintain, or stabilize prices and allocate customers for fasteners and fastener-attaching machines sold in interstate and international commerce, in restraint of trade and commerce in violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

49.     For the purpose of formulating and effectuating the contract, combination, or conspiracy, upon information and belief, Defendants, acting through officers, directors, employees, and agents, engaged in anticompetitive activities, the purpose and effect of which were to artificially fix, raise, maintain, or stabilize prices and allocate customers for fasteners and fastener-attaching machines.  Defendants' anticompetitive activities included:

a.      Participating in meetings and communications to discuss the prices and supply of fasteners and fastener-attaching machines and the allocation of customers;

b.      Agreeing to manipulate the prices and the supply of fasteners and fastener-attaching machines sold in the United States in a manner that deprived direct purchasers of free and open competition;

c.      Issuing price announcements and price quotations in accordance with the agreements reached;

d.    Selling fasteners and fastener-attaching machines to customers in the United States at supra-competitive prices; and

e.    Providing false statements to the public to explain increased prices for fasteners and fastener-attaching machines.

f.    Plaintiff and the Class Members paid more for fasteners and fastener-attaching machines than they would have paid under conditions of free and open competition.  As a direct and proximate result of the illegal contract, conspiracy, or combination alleged above, Plaintiff and Class Members were injured and financially damaged in their business and property, in amounts to be determined at trial.

## FRAUDULENT CONCEALMENT

50.    Plaintiff had no knowledge of Defendants' unlawful, continuing, self-concealing conspiracy and could not have discovered the contract, combination, or conspiracy before September 19, 2007, by the exercise of due diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

51.    Because the contract, combination, or conspiracy was kept secret by Defendants, Plaintiff was unaware of the fact that prices of fasteners and fastener-attaching machines were secretly raised, fixed, maintained, or stabilized as alleged herein.

52.    As a result of the concealment of the conspiracy, Plaintiff asserts the tolling of the applicable statute of limitations affecting its right of action.

736819.5                              14

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on behalf of the Class defined herein, adjudging and decreeing that:

A.      This action may proceed as a class action, with Plaintiff as the designated Class representative and its counsel as Class Counsel;

B.      Defendants have engaged in a contract, combination, and conspiracy in violation of section 1 of the Sherman Act (15 U.S.C. § 1), and that Plaintiff and the members of the Class have been injured in their business and property as a result of Defendants' violations;

C.      Plaintiff and the members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

D.      Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

E.      Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

F.      Plaintiff and members of the Class receive such other or further relief as may be just and proper.

736819.5

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands

a trial by jury of all issues so triable.

Dated: December __, 2007              By: _____
                                      David S. Stellings (State Bar No. DSS-5343)
                                      Jennifer Gross
                                      Lieff, Cabraser, Heimann & Bernstein, LLP
                                      780 Third Avenue, 48th Floor
                                      New York, NY 10017-2024
                                      Phone: (212) 355-9500
                                      Fax:  (212) 355-9592
                                      dstellings@lchb.com
                                      jgross@lchb.com

                                      Joseph R. Saveri
                                      Michele C. Jackson
                                      Eric B. Fastiff
                                      Lieff, Cabraser, Heimann & Bernstein, LLP
                                      275 Battery Street, 30th Floor
                                      San Francisco, CA 94111-3339
                                      Phone:  (415) 956-1000
                                      Fax: (415) 956-1008
                                      jsaveri@lchb.com
                                      mjackson@lchb.com
                                      efastiff@lchb.com

                                      Kevin Bruce Love
                                      Michael E. Criden
                                      Criden & Love, P.A.
                                      7301 S.W. 57th Court, Suite 515
                                      South Miami, FL  33143
                                      Phone:  (305) 357-9010
                                      Fax:  (305) 357-9050
                                      klove@hanzmancriden.com
                                      mcriden@hanzmancriden.com